PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiffs and the Proposed Class

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

KYLE JOHNSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CONVERGE MARKETING LLC, a New York entity d/b/a TOPGUTTERGUARDSYSTEMS.COM; and LEAF FILTER NORTH INC., an Ohio corporation,

Defendants.

Case No. 3:26-cv-01382-GPC-BLM

**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF B&P CODE SECTION 17529.5 (UNLAWFUL SPAMMING)**

# I. NATURE OF ACTION

1. Defendants are serial fraudsters that operate or benefit from deceptive "consent farms": websites that (1) lure visitors via spam e-mails (often relating to gutter improvement systems) that falsely promising financial rewards, (2) collect visitors' personal information, and (3) then resell consumer information to third party marketers. The predictable result is a veritable merry-go-round of relentless (and fraudulent) e-mails, calls, and texts.

2. A cursory review of online sources reveals that Defendants are notorious for sending mountains of false and misleading spam to drive traffic to their consent farm websites.[1] They flood consumer inboxes with false and misleading advertisements using falsified header information, spoofed domains to evade spam filters, and false subject lines. They do this to mask the true sender and induce unwary recipient to open messages under false pretenses.

3. Fortunately, California's robust Anti-Spam Law imposes both strict liability and liquidated damages against companies like Defendants that benefit from deceptive unsolicited commercial e-mail advertisements (i.e., "spam"). It dispenses with the requirement of proving actual damages, intent, or scienter, and forces companies to actively monitor their e-mail promotions by imposing exceptionally broad liability. [2]

---

[1] *See* https://www.youtube.com/watch?v=dK3fT86528k&t=70 (news report detailing relentless spam and all-day sales pitches often targeting elderly homeowners with high-pressure tactics and inflated pricing); and *https://www.facebook.com/groups/317831066716463/posts/566900128476221/* ("Leaf filter spams my email several times a day and always with a different bogus email address.").

[2] *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 829-30 (Cal. Ct. App. 2d Dist. 2011) (Section 17529.5 "impos[es] strict liability on advertisers who benefit from (and are the ultimate cause of) deceptive e-mails"); *Id.* at 822 (Section 17529.5 "does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message"); Id at 821 ("Section 17529.5 … does not include any 'scienter' or intent requirement"); *Id.* at 820 ("[S]ection 17529.5 does not require the plaintiff to show that the defendant actually made a false or deceptive statement…. [B]y its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails."

## II. JURISDICTION AND VENUE

4. Plaintiff is and was at all times mentioned herein a citizen of the State of California who received spam e-mail from Defendants.

5. Defendant Converge Marketing is a New York entity that operates as an affiliate marketer of Defendant Leaf Filter North Inc., which is an Ohio corporation. At all relevant times, each of these entities operated in concern with respect to the unlawful conduct alleged herein, and each ratified, approved, authorized, and benefitted from the acts and omissions of the other Defendant. Accordingly, each Defendant is jointly and severally liable for the unlawful conduct alleged in this Complaint. For convenience and clarity, they are referred to collectively as "Defendants."

6. Defendants are subject to jurisdiction under California's "long-arm" statute because the exercise of jurisdiction over Defendants is not "inconsistent with the Constitution of this state or the United States."

7. Venue is proper in this County because neither Defendant is a citizen of California and because many class members received the spam and were injured in this County.

8. This action was originally filed in California State Court. Defendants removed the action to this Court, invoking jurisdiction under the Class Action Fairness Act ("CAFA"). Plaintiff agrees that this Court has jurisdiction over this action under CAFA.

## III. FACTUAL ALLEGATIONS

9. Plaintiff Kyle Johnson is a California resident and citizen and is the owner of the e-mail address kylejohnson499@yahoo.com. Defendants spam him relentlessly, despite the fact that he has never consented to receive any e-mail from Defendants and has repeatedly tried to unsubscribe. As just one example, on January 12 2026, he received an e-mail from **tomatonews@info.revivalofhome.com** with the subject line **"Stop Winter Clogs - 75% OFF Your Entire LeafFilter Purchase!"**, with a click-

through link to www.topgutterguardsystem.com, which both promotes the Leaf Filter product and operates as a "consent farm." That spam is attached hereto as **Exhibit "A".**

10. The previously-identified spam e-mail was sent from "spoofed" e-mail address to conceal the identity of the true sender. Indeed, after receiving the e-mail, Plaintiff searched the publicly available WHOIS database to identify the sender associated with the domain used in the From" field – and could do so because the sending domain was not registered to, publicly associated with, or traceable to Defendants through WHOIS or any other public registry. In fact, the WHOIS lookup reports that the revivalofhome.com domain is privately registered and that no other information is available about it. See https://lookup.icann.org/en/lookup (last accessed March 2026).

11. The subject line of the spam promised that plaintiff was entitled to 75% off a purchase. This claim was false and misleading because it describes a perpetual discount rather than a genuine, time-limited price reduction, and thus functions as the bait in a classic bait-and-switch scheme. A "75% off" representation necessarily conveys to a reasonable consumer that the advertiser is temporarily reducing prices from a bona fide regular or prevailing price in order to induce immediate action. When, as here, the same "75% off" offer is continuously or routinely advertised to all consumers regardless of timing, demand, or market conditions, the supposed discount ceases to have any meaning: it is simply the normal sales pitch and reflects neither a former regular price nor a genuine savings.

12. In practice, Defendants use the dramatic "75% off" headline to lure consumers into engaging — often prompting in-home sales visits or follow-up communications — only to shift the transaction to individualized pricing, exclusions, or high-pressure sales tactics that bear little relation to the advertised discount. This is the essence of a bait-and-switch: a striking but illusory offer used to capture attention and generate leads, followed by a different, less favorable reality once the consumer is engaged. California law prohibits exactly this type of perpetual, illusory discounting because it misrepresents material facts about price, creates a false sense of urgency and

value, and deceives consumers at the moment they decide whether to respond to the advertisement. Moreover, it is part of an evergreen marketing tactic uniformly deployed to induce recipients to provide their contact information to Defendants' sales funnel.

13. Based on publicly available sources, it is believed that Defendants are responsible for over 1,000,000 spam e-mails to Californians each year.

14. The spam identified above is an "Unsolicited Commercial e-mail advertisement" because plaintiff had no pre-existing relationship with either Defendant and because the e-mail was initiated for the purpose of advertising or promoting the purchase of a leaf filter gutter system. *See* Bus. & Prof. Code § 17529.1(c).

15. Plaintiff never gave "direct consent" to receive commercial e-mail advertisements from Defendants or their marketing agents. Indeed, "direct consent" under the statute requires a unique level of specificity and clarity that must be informed, knowing, and explicit — meaning that consumers must be told clearly that they are agreeing to receive advertising emails from a particular sender, and for what purpose, at the time they provide their email address.

16. The above spam violates Bus. & Prof. Code § 17529.5 because:

a. **Unauthorized and Deceptive Use of a Domain Name in Violation of Section 17529.5(a)(1).** A domain name is the unique Internet address used to identify the origin of an email transmission. It functions as a digital signature and is intended to enable recipients to verify the sender's identity. The email described above violates Business and Professions Code § 17529.5(a)(1) because it appeared, on its face, to originate from a source connected to his local neighborhood community. Specifically, the email's header identified the sender tomatonews@info.revivalofhome.com" which conveyed the impression that the message was affiliated with a neighborhood-based group. This deceived plaintiff into clicking on the e-mail to investigate a message from a neighbor or community group.

b. **<u>Misrepresented Header Information In Violation of Section 17529.5(a)(2).</u>** An email header is the portion of an electronic mail message that contains the routing, addressing, and technical information necessary for the message to be transmitted and delivered across the internet. Unlike the visible body of an email, the header records the path the message takes from the sender to the recipient and includes fields such as the "From," "To," "Date," "Subject," and the originating Internet Protocol (IP) address. The information in the header — "info.revivalofhome.com" — was deceptive because it was structured and phrased in a manner that conveyed the appearance of a legitimate, community-oriented or locally relevant home services provider, rather than an unknown third-party advertiser. Plaintiff clicked on it and investigated it because he was deceived on that basis.

c. **<u>Deceptive Subject Line and Contents in Violation of Section 17529.5(a)(3).</u>** This section prohibits deceptive subject lines and imposes an affirmative duty of accuracy in the material facts contained in the content of commercial e-mail. The email described above also violates Business and Professions Code § 17529.5(a)(3) because it prominently advertised a "75% OFF" discount, which was false and misleading because it conveyed the impression of a genuine, limited-time price reduction when, in reality, no such "discount" exists. The representation suggests that consumers are receiving a substantial, time-sensitive savings relative to a higher, established price, when no such reference price exists or is meaningfully offered in the ordinary course of business. Under California law, including Business and Professions Code section 17501, it is unlawful to advertise a price comparison unless the former price was the actual, bona fide price at which the article was openly and actively offered for sale for a reasonably substantial period of time. Here, the purported "75% OFF" claim is not based on any legitimate prior price, but instead is used continuously or

repeatedly to create a false sense of urgency and value, thereby misleading consumers into believing they are receiving a substantial discount when they are not.

17. Under Business & Professions Code §17529.5(b)(1)(B)(ii), each unlawful email constitutes a separate "incident" for purposes of statutory damages. The statute is structured to treat every deceptive or misleading email as an independent violation because each transmission represents a distinct act of deception and a separate invasion of the recipient's privacy and inbox. The Legislature expressly adopted this "per email" approach to deter mass spamming campaigns, recognizing that spam's harm multiplies with each delivery, regardless of whether the content is identical.

18. Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendants' conduct. Plaintiff spent valuable time and attention identifying, reading, and deleting the deceptive email; investigating an e-mail that he thought was from a neighbor or community group based upon the forged header and domain; spent time searching for an illusory discount that did not exist; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage on a metered data plan, and battery life.

19. The unauthorized domain name, misleading header and subject line also invaded Plaintiff's privacy and disrupted the ordinary use and enjoyment of Plaintiff's email account, diminishing its value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendants' unlawful email and are redressable by statutory and injunctive relief.

20. Defendants have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements. In fact, Defendants actively defy California law, as shown by the fact that Defendants continue to spam California residents despite the existence of this lawsuit.

## IV. CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action on behalf of all persons similarly situated and seek certification of the following class:

> All California citizens who received any commercial e-mail from Defendants at a California e-mail address where such email contained: (1) a falsified, misrepresented, or forged domain name; (2) falsified, misrepresented, or forged header information; or (3) false or misleading subject line or contents in violation of California Business and Professions Code § 17529.5, within the four years preceding the filing of this action.

22. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

23. **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, but Plaintiffs are informed and believes, and thereon, alleges that there are at least 10,000 members of the Class.

24. **Typicality.** Plaintiffs' claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described in this Complaint.

25. **Adequacy of Representation.** Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs have retained attorneys who are experienced in the handling of complex litigation and class actions, and intend to prosecute this action vigorously.

26. **Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a. Whether Defendants sent unsolicited commercial e-mail to Class members;

b. Whether the e-mails were sent in violation of Business and Professions Code Section 17529.5.

27. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

28. **Ascertainability**. Defendants keep computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendants have one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## V. CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

29. Plaintiff received the above unsolicited commercial e-mail at a California e-mail address within one year prior to filing the Complaint at a California e-mail address.

30. As shown above, the spam violated one or more provisions of Section 17529.5.

31. Defendants are strictly liable for violation of Section 17529.5 for sending each spam.

32. Defendants have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail

advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

33. Plaintiff and every Class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendants (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

a. For an order certifying that the action be maintained as a class action, that Plaintiff be designated as class representative, and that undersigned counsel be designated as class counsel;
b. For all available declaratory, legal, and equitable relief including injunctive relief;
c. For statutory damages of $1,000 per violative e-mail;
d. For punitive damages;
e. For attorneys' fees and costs as allowed by law; and
f. For any and all other relief at law or equity that may be appropriate.

Dated: March 30, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: */s/ Scott J. Ferrell*
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class