UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE JOHNSON, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>CONVERGE MARKETING LLC, a Delaware entity, d/b/a TOPGUTTERGUARDSYSTEM.COM; and LEAFFILTER NORTH, LLC, an Ohio entity,<br><br>                              Defendants. | Case No.:  26-CV-1382-GPC-BLM<br><br>**ORDER GRANTING DEFENDANT LEAFFILTER NORTH, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND GRANTING PLAINTIFF'S REQUEST FOR LIMITED JURISDICTIONAL DISCOVERY**<br><br>**[ECF No. 12]** |

This case arises from Plaintiff Kyle Johnson's allegations that he received unsolicited commercial email advertisements promoting LeafFilter North, LLC's ("LeafFilter") products in violation of California Business and Professions Code § 17529.5. ECF No. 1-2. Pending before the Court is Defendant LeafFilter's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). ECF No. 12. The Court finds the matter suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1) and therefore VACATES the hearing set

1

for June 26, 2026. For the reasons set forth below, the Court GRANTS Defendant's motion to dismiss for lack of personal jurisdiction.

## BACKGROUND

Plaintiff Kyle Johnson is a California resident who alleges that he received unsolicited commercial email messages promoting gutter protection products associated with Defendant LeafFilter North, LLC ("LeafFilter"). ECF No. 1-2 ¶¶ 4, 8. Plaintiff further alleges that he had no prior relationship with LeafFilter and did not consent to receive such communications. *Id*. ¶¶ 13-14.

On January 12, 2026, Plaintiff received an email with the subject line "Stop Winter Clogs - 75% OFF Your Entire LeafFilter Purchase!" *Id.* ¶ 8. The email contained a hyperlink directing users to www.topgutterguardsystem.com, a website that promotes LeafFilter's products. *Id*. Plaintiff claims that the email was sent from a spoofed or untraceable domain and contained misleading representations, including a purported discount that was not genuine. *Id*. ¶¶ 9-10.

Plaintiff further alleges that the email is representative of a broader pattern of conduct in which LeafFilter, either directly or through third-party marketers, disseminates large volumes of unsolicited commercial email advertisements to consumers, including California residents. *Id*. ¶¶ 1-2, 12. According to the Complaint, these emails employ falsified domain names, misrepresented header information, and deceptive subject lines in violation of California Business and Professions Code § 17529.5. *Id*. ¶ 15.

Plaintiff alleges that LeafFilter is subject to personal jurisdiction in California because the alleged unlawful emails were received by Plaintiff and other putative class members in California and caused harm within the forum. *Id*. ¶¶ 4, 6, 20. Plaintiff alleges that all Defendants acted in concert and that each Defendant, including LeafFilter, "ratified, approved, authorized, and benefitted from" the challenged conduct, rendering them jointly and severally liable. *Id*. ¶ 5.

26-CV-1382-GPC-BLM

LeafFilter is an Ohio limited liability company headquartered in Hudson, Ohio, with the majority of its executives and operations located in Ohio and New York. *Id.* ¶ 5; ECF No. 12-2, ¶¶ 3-4. According to LeafFilter's submitted declaration, as part of its marketing and advertising program, LeafFilter contracts with Defendant Converge Marketing, LLC ("Converge"), a New York entity, to perform marketing and related services, including lead generation. ECF No. 12-2 ¶ 8. Pursuant to a written agreement, Converge operates as an independent contractor and utilizes its own resources and vendors to provide marketing and advertising services. *Id.* As part of this work, Converge contracts with independent third-party marketers who distribute advertisements for LeafFilter's products, including email messages. *Id.* ¶ 9. LeafFilter asserts that it is not a party to Converge's agreements with these third-party marketers and does not maintain a direct contractual relationship with them. *Id.* LeafFilter further states that, under its agreement with Converge, Converge was required to use only content and forms of media approved by LeafFilter and to comply with applicable laws and regulations governing email marketing. *Id.* ¶ 11.

According to LeafFilter, these third-party marketers control the transmission of the emails, including selecting recipients and originating domain names. *Id.* ¶ 11. LeafFilter further submits that it does not review the emails before they are sent, does not provide recipient email addresses, and does not control to whom the emails are transmitted. *Id.* ¶¶ 11-12. LeafFilter also states that it does not ask, direct, suggest, or require that emails be sent to California residents and cannot determine the geographic location of recipients from email addresses alone because email addresses are not tied to a particular geographic location. *Id.* ¶ 12, 15.

Plaintiff filed this action asserting a claim under California Business and Professions Code § 17529.5 on behalf of himself and a putative class of similarly situated California residents based on the allegedly unlawful and unsolicited commercial emails. ECF No. 1-2, ¶¶ 20, 28-30. Defendant LeafFilter now moves to dismiss the claims against it for lack

26-CV-1382-GPC-BLM

of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that it lacks sufficient contacts with California and that Plaintiff's claims arise, if at all, from the conduct of independent third parties rather than any actions purposefully directed by LeafFilter toward the forum. ECF No. 12-1 at 4-5.[1] Plaintiff opposes the motion and contends that LeafFilter's alleged marketing scheme, including the dissemination of unlawful commercial emails received in California, is sufficient to establish personal jurisdiction. ECF No. 15.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides that "[a] defendant may move, prior to trial, to dismiss the complaint for lack of personal jurisdiction." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs.*, Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)). California's long-arm statute is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." *Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d 161, 167 (9th Cir. 1976) (quoting *Threlkeld v. Tucker*, 496 F.2d 1101, 1103 (9th Cir. 1974)). Accordingly, the Court need only determine whether the exercise of jurisdiction comports with due process.

---

[1] Page numbers are based on the CM/ECF pagination.

26-CV-1382-GPC-BLM

Due process requires that a nonresident defendant have sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

If the motion is decided on written materials rather than following an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Amba Marketing Sys., Inc. v. Jobar Int'l*, 551 F.2d 784, 787 (9th Cir. 1977)).

Unlike a motion to dismiss under Rule 12(b)(6), a court considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction may consider jurisdictional evidence presented in affidavits. *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 634 (N.D. Cal. 2020). While the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit . . . [the Court] resolve[s] factual disputes in the plaintiff's favor." *Mavrix Photo*, 647 F.3d at 1223 (quoting *Data Disc*, 557 F.2d at 1284). Finally, the plaintiff must establish personal jurisdiction as to each defendant individually. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007).

## DISCUSSION

### I.    The Court Lacks Personal Jurisdiction Over LeafFilter

Personal jurisdiction can be either "general" or "specific." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). Here, Plaintiff does not contend

26-CV-1382-GPC-BLM

that Defendant is subject to general jurisdiction in this Court. Rather, the dispute is limited to whether the Court may properly exercise specific jurisdiction over Defendant.

### A. Specific Jurisdiction

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum[.]" *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.8. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984)). The analysis further "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. Thus, "the plaintiff cannot be the only link between the defendant and the forum[,]" and a defendant's own conduct must "connect[] him to the forum in a meaningful way." *Id.* at 285, 290.

The Ninth Circuit conducts a three-prong test to determine whether a non-resident defendant is subject to specific personal jurisdiction in a given forum:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

The plaintiff bears the burden of satisfying the first two prongs of the test. *Id*. If the plaintiff succeeds, "the burden then shifts to the defendant to 'present a compelling case'

6

26-CV-1382-GPC-BLM

that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-78 (1985)).

### 1. Purposeful Direction

Depending on the cause of action, courts apply one of two tests when analyzing the first prong of the Ninth Circuit's personal jurisdiction assessment. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (explaining the "purposeful availment" and "purposeful direction" tests). The parties seemingly agree that the cause of action at hand—a violation of California's Anti-Spam Law—is subject to the purposeful direction framework from *Calder v. Jones*, 465 U.S. 783 (1984). ECF No. 15 at 10; ECF No. 17 at 7. *See also Mavrix Photo*, 647 F.3d at 1228 (noting that purposeful direction is the "proper analytical framework" for tort-like causes of action). The Court agrees and proceeds with a *Calder* analysis.

Under the *Calder* test, the plaintiff must show that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger.*, 374 F.3d at 803 (quoting *Dole Food, Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). Here, the parties dispute whether LeafFilter expressly aimed its conduct at California where the allegedly unlawful emails were sent by independent third-party marketers that LeafFilter contends it did not control.

### a. Whether Third-Party Marketers' Conduct Is Attributable to LeafFilter

Plaintiff's theory of specific jurisdiction relies on the forum contacts of third-party marketers rather than LeafFilter's own contacts with California. But the Supreme Court has repeatedly made clear that to establish minimum contacts necessary to create specific jurisdiction, the relationship between a defendant and a forum "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. 277 at 284 (emphasis in original) (quoting *Burger King Corp.* 471 U.S. at 475). Accordingly, "the

unilateral activity of another party or a third person is not an appropriate consideration" in determining whether a defendant has sufficient contacts with the forum. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 417.

Applying these principles in the context of allegedly unlawful marketing emails, courts have declined to exercise specific jurisdiction where independent third-party marketers, not the defendant themselves, controlled the transmission of the challenged emails. In *Diaz v. One Techs., LLC*, the Ninth Circuit held that affiliate-sent marketing emails could not establish specific jurisdiction where the defendant "does not send or otherwise control the emails" and the third-party publishers controlled "all aspects of transmitting the emails," including selecting recipients. 2023 WL 6633842, at *1 (9th Cir. Oct. 12, 2023) (unpublished). Similarly, in *Durward v. One Techs., LLC*, a California district court found no purposeful availment where third-party affiliates, rather than the defendant itself, transmitted the challenged emails. No. CV 19-6371-GW-AGRX, 2019 WL 4930229, at *4-6 (C.D. Cal. Oct. 3, 2019). The court emphasized that the defendant "has no involvement with or control over the origination, approval, or delivery of the emails," does not "draft the content of the emails sent by the publishers," "review or approve them," "know where . . . the publishers send the emails," or "decide the customers to whom the publishers should publish the emails." *Id*. at *4. Thus, the court concluded that the plaintiff "provided no basis to allow the Court to exercise jurisdiction over [d]efendant," and that the third parties' forum contacts could not be imputed to the defendant. *Id*. at *5.

The same reasoning applies here. LeafFilter submits evidence that it contracted with Converge, an independent contractor, to provide marketing and lead-generation services, and that Converge, in turn, utilized downstream third-party marketers to distribute advertisements. ECF No. 12-2 ¶ 8-9. According to LeafFilter, those third-party marketers, who are "at least two layers removed" from LeafFilter, controlled the transmission of the

8

26-CV-1382-GPC-BLM

emails and made the "fundamental decisions" concerning the emails themselves, including selecting recipients and choosing the originating domain names. ECF No. 12-1 at 6-7. LeafFilter further asserts that it did not send the emails at issue, did not provide recipient lists, did not determine where the emails would be sent, and did not direct any emails specifically toward California residents. *Id*. at 7.

Plaintiff nevertheless argues that Defendants "operated in concert" and "ratified, approved, authorized, and benefitted from" the challenged conduct. ECF No. 1-2 ¶ 5. But those allegations are largely conclusory and unsupported by specific jurisdictional facts showing that LeafFilter controlled the transmission of the emails, selected California recipients, or otherwise expressly aimed the challenged conduct toward California. Although uncontroverted allegations must be accepted as true at this stage, "the plaintiff cannot simply rest on the bare allegations of its complaint" when opposing a motion to dismiss for lack of personal jurisdiction. *Schwarzenegger*, 374 F.3d at 800. Moreover, Plaintiff's allegations that LeafFilter "approved" and "authorized" the challenged conduct, ECF No. 1-2 ¶ 5, are directly contradicted by LeafFilter's declaration, which states that independent third-party marketers controlled the transmission of the emails and selected the recipients and that LeafFilter played no role in such decisions, ECF No. 12-2 ¶¶ 8-12. The Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo*, 647 F.3d at 1223. Accordingly, Plaintiff has failed to establish that the forum contacts of independent third-party marketers may be attributed to LeafFilter for purposes of specific personal jurisdiction.

### b. Whether the Linked Website Establishes Express Aiming

Plaintiff nevertheless argues that LeafFilter purposefully directed its conduct toward California because the challenged emails contained links directing recipients to an interactive commercial website promoting LeafFilter's products and services. ECF No. 1-2 ¶ 8. In support, Plaintiff relies heavily on *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir.

26-CV-1382-GPC-BLM

2025), as well as internet-jurisdiction cases such as *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) (finding express aiming where defendant operated a commercially interactive website exploiting the California market), and *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) (analyzing internet contacts based on a website's level of interactivity and commercial nature).

However, *Briskin* involved materially different conduct than that at issue here because the alleged tortious conduct arose from Shopify's own operation of its online platform, not from allegedly unlawful marketing emails sent by third parties. There, the Ninth Circuit found express aiming where Shopify itself allegedly "installed tracking cookies onto [the consumer's] device," "track[ed] [the device's] physical location," and collected and commercially exploited consumers' personal identifying information while allegedly knowing that the consumers were located in California. *Briskin*, 135 F.4th at 746-47. The court emphasized that Shopify "knowingly install[ed] tracking software onto unsuspecting Californians' phones so that it could later sell the data it obtained," and that Shopify's own conduct "connect[ed] [Shopify] to [California] in a meaningful way." *Id*. at 759 (quoting *Walden*, 571 U.S. at 290). Indeed, the Ninth Circuit repeatedly stressed that "Shopify itself" allegedly engaged in the challenged conduct by "extract[ing], collect[ing], maintain[ing], distribut[ing], and exploit[ing]" California consumers' data "for its own commercial gain." *Id*. at 755-56.

Here, by contrast, Plaintiff's sole cause of action arises from allegedly deceptive commercial emails sent in violation of California Business and Professions Code § 17529.5. ECF No. 1-2, ¶ 12-16. The allegedly unlawful conduct therefore occurred, if at all, when the emails were transmitted and received—not when Plaintiff later clicked a hyperlink contained within the email. Although the linked website may have been part of the broader marketing campaign, the website itself is ancillary to the statutory violation alleged in the Complaint.

Moreover, even accepting Plaintiff's allegations regarding the website's interactive and commercial nature, the relevant forum contacts for purposes of specific jurisdiction must still arise from "contacts that the 'defendant himself' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Here, LeafFilter submits evidence that independent third-party marketers, not LeafFilter, controlled the transmission of the emails, including recipient selection and the originating domains. ECF No. 12-2, ¶ 8-9. Plaintiff has not presented any evidence demonstrating otherwise. Thus, unlike in *Briskin*, the challenged conduct was not allegedly performed by LeafFilter itself. The existence of a commercially interactive website therefore does not, standing alone, establish that LeafFilter expressly aimed the challenged email transmissions at California residents.

In sum, Plaintiff has failed to establish that LeafFilter expressly aimed its conduct at California. Because Plaintiff has not satisfied this part of the *Calder* effects test, Plaintiff has failed to show that LeafFilter purposefully directed its conduct toward California. *Schwarzenegger*, 374 F.3d at 805 ("All three parts of the [*Calder*] test must be satisfied."). Accordingly, Plaintiff has failed to establish specific personal jurisdiction over LeafFilter in California. *Id.* at 802 ("If the plaintiff fails to satisfy either [the purposeful direction prong or the forum-related activities prong], personal jurisdiction is not established in the forum state.").

Because Plaintiff's failure to establish purposeful direction is dispositive, the Court need not address the remaining prongs of the Ninth Circuit's specific jurisdiction analysis. *Id.* at 802, 807.

## II.      Plaintiff Has Shown That Limited Jurisdictional Discovery Is Warranted

Plaintiff alternatively seeks limited jurisdictional discovery concerning LeafFilter's relationship with Converge and the third-party marketers responsible for transmitting the emails at issue, including discovery regarding control over email content and transmission,

26-CV-1382-GPC-BLM

Case 3:26-cv-01382-GPC-JAC    Document 23    Filed 06/24/26    PageID.274    Page 12 of 15

recipient targeting, compensation structure, opt-out lists, and whether marketers geolocated recipients. ECF No. 15 at 28 n.7. LeafFilter opposes the request and argues that discovery would be based on speculation. ECF No. 17 at 14.

"Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quotation omitted). A district court may deny such discovery when the request is "based on little more than a hunch that it might yield jurisdictionally relevant facts," *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). However, discovery is appropriate where a plaintiff makes a "colorable" showing that personal jurisdiction may exist, *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007). Jurisdictional discovery should be denied only where "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

Here, Plaintiff alleges that LeafFilter, Converge, and the third-party marketers acted together to distribute the emails at issue and that LeafFilter "ratified, approved, authorized, and benefitted" from those marketing activities. ECF No. 1-2 ¶ 5; ECF No. 15 at 23. LeafFilter, by contrast, contends that Converge operated as an independent contractor and that independent third-party marketers "control the transmission of emails and make certain fundamental decisions concerning the emails themselves, including choosing each email's recipient." ECF No. 12-2 ¶ 11.

As a result, the extent of LeafFilter's own involvement in, as well as its oversight, control, direction, and authorization of the challenged email campaign remains unclear and is directly contested by the parties. While Plaintiff's current showing is insufficient to establish specific personal jurisdiction, Plaintiff contends that LeafFilter is bound by the

12

26-CV-1382-GPC-BLM

acts of Converge and the entities engaged by Converge to distribute the emails and argues that LeafFilter exercised control over the content of those emails. ECF No. 15 at 10-17.

Moreover, LeafFilter's own evidence suggests that it may have exercised at least some oversight over the challenged marketing activities. In the affidavit accompanying LeafFilter's motion to dismiss, LeafFilter asserts that it "required Converge to only use content and forms of media approved by LeafFilter and to comply with applicable laws and regulations, particularly laws governing email marketing." ECF No. 12-2 ¶ 11. The affidavit further states that Converge contracted with independent marketers to distribute advertisements for LeafFilter's products, including the emails at issue. *Id*. ¶¶ 9, 11. While LeafFilter maintains that those marketers controlled recipient selection and transmission decisions, the extent to which LeafFilter's approval authority and compliance requirements translated into actual supervision or control over the challenged campaign remains unclear on the present record.

This is not a case in which Plaintiff merely speculates that jurisdictional facts might exist. Rather, the parties dispute specific facts bearing directly on the jurisdictional inquiry, and much of the information relevant to those issues is uniquely within Defendants' possession. ECF No. 15 at 10-17, 27-28; ECF No. 12-2 ¶¶ 8-16. Thus, the Court cannot determine on the present record the extent to which LeafFilter directed, authorized, approved, controlled, or ratified the conduct giving rise to Plaintiff's claims.

Accordingly, although Plaintiff has not established specific personal jurisdiction on the present record, Plaintiff has made a colorable showing that a basis for personal jurisdiction may exist. The record does not foreclose the possibility that additional discovery could reveal facts bearing on whether the third-party marketers acted as agents of, or under the direction and control of, LeafFilter for purposes of the challenged email campaign. Because those jurisdictional facts remain disputed and much of the relevant information is uniquely within Defendants' possession, the Court concludes that limited

26-CV-1382-GPC-BLM

jurisdictional discovery is warranted. The Court therefore grants Plaintiff's request for limited jurisdictional discovery concerning LeafFilter's relationship with Converge and the third-party marketers involved in the transmission of the emails at issue.[2]

### III.   Dismissal Without Prejudice and With Leave to Amend

Because the Court lacks personal jurisdiction over LeafFilter, dismissal is appropriate under Rule 12(b)(2). "A dismissal for lack of personal jurisdiction does not adjudicate the merits and so should be without prejudice." *Cox v. CoinMarketCap OpCo, LLC*, 112 F.4th 822, 837 (9th Cir. 2024).

Further, where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). The Court has granted jurisdictional discovery to provide Plaintiff with the opportunity to seek additional facts that may establish a basis for personal jurisdiction. Accordingly, Plaintiff's claims against LeafFilter are dismissed without prejudice and with leave to amend.

### CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff has failed to establish personal jurisdiction over Defendant LeafFilter North, LLC. Although Plaintiff has not made a prima facie showing of personal jurisdiction, Plaintiff has made a colorable showing that limited jurisdictional discovery may reveal facts bearing on whether the

---

[2] The Court notes that its grant of jurisdictional discovery is limited to these issues. Plaintiff requests jurisdictional discovery on other topics—such as LeafFilter's website traffic and sales numbers. However, the Court has already noted that LeafFilter's operation of its website is not relevant to the claims at issue here, which concern only allegedly illegal spam emails.

26-CV-1382-GPC-BLM

conduct of Converge and the third-party marketers may be attributed to LeafFilter for purposes of specific personal jurisdiction.

Accordingly, the Court **GRANTS** Defendant LeafFilter North, LLC's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). Plaintiff's claims against LeafFilter North, LLC are dismissed without prejudice.

The Court further **GRANTS** Plaintiff's request for limited jurisdictional discovery concerning LeafFilter's relationship with Converge and the third-party marketers involved in the transmission of the emails at issue, including the degree of control exercised over email content, recipient targeting, transmission decisions, and related matters bearing on personal jurisdiction. Plaintiff and LeafFilter shall complete jurisdictional discovery within thirty (30) days of the date of this Order. The Court further **GRANTS** Plaintiff leave to file an Amended Complaint following the completion of jurisdictional discovery. Any Amended Complaint shall be filed within twenty (20) days after the completion of jurisdictional discovery.

The hearing scheduled for June 26, 2026, is **VACATED**. Thus, the parties' joint motion to continue and reset the hearing is **DENIED** as moot. ECF No. 22.

IT IS SO ORDERED.

Dated:  June 24, 2026

Hon. Gonzalo P. Curiel
United States District Judge

26-CV-1382-GPC-BLM